ESTATE OF STEVEN GAVIN vs. TEWKSBURY STATE HOSPITAL
& another.[1]

No. 12-P-62.

Middlesex. October 4, 2012. - January 18, 2013.

Present: GRASSO, FECTEAU, & AGNES, JJ.

Further appellate review granted, 464 Mass. 1108 (2013).

*Massachusetts Tort Claims Act. Wrongful Death. Practice, Civil,* Presentment
of claim under Massachusetts Tort Claims Act, Wrongful death. *Negligence,*
Wrongful death. *Executor and Administrator,* Governmental claims.

In a civil action asserting a claim for wrongful death under the Massachusetts
Torts Claims Act, G. L. c. 258, § 4, the judge properly dismissed the
complaint, where the presentment was improper, in that the claimant mak-
ing the presentment was not the duly appointed executor or administrator
of the decedent's estate, and therefore lacked the legal capacity to make
the presentment; and where the complaint for wrongful death could not be
maintained, in that it had not been brought by the duly authorized executor
or administrator. [142-146] AGNES, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on
March 24, 2011.

A motion to dismiss was heard by *Garry V. Inge,* J.

*Robert S. Sinsheimer* for the plaintiff.

*Mark P. Sutliff,* Assistant Attorney General, for the defendants.

GRASSO, J. Does the "claimant" in a presentment that asserts
a claim for wrongful death under the Massachusetts Tort Claims
Act, G. L. c. 258, § 4, inserted by St. 1978, c. 512, § 4 (Act),
permissibly include someone who is not a duly appointed execu-
tor or administrator? We conclude that it does not. This is an
appeal from the dismissal of a wrongful death action against
Tewksbury State Hospital and the Commonwealth under the
Act. A judge of the Superior Court dismissed the complaint on

[1] Commonwealth of Massachusetts.

the pleadings, concluding that the plaintiff lacked the legal capacity to make a valid presentment. We affirm.

1. *Background.* Steven J. Gavin died on August 11, 2008, from a bacterial infection allegedly due to the improper reinsertion of a feeding tube and improper monitoring by physicians and staff at Tewksbury State Hospital. At the time of his death, Gavin left two teenage children as his heirs at law and next of kin. Gavin also left a will naming his father, James Thomas Gavin (Thomas), and his mother, Mary Gavin (Mary), as coexecutors of his estate.

On July 21, 2010, an attorney sent a presentment letter to the chief executive officer of the hospital, and to the Attorney General, demanding relief under the Act on behalf of "the Estate of Steven Gavin and his individual children." The presentment letter set forth in detail the basis of the claim of wrongful death. At the time of the presentment, no Probate and Family Court filings had occurred, and no executor or administrator of Gavin's estate had been appointed.

On August 30, 2010, Maureen McGee, general counsel of the Executive Office of Health and Human Services, replied to the presentment letter, confirming that the office had received it from the Attorney General[2] and would be reviewing the claim to determine whether a settlement offer was warranted. On March 24, 2011, after the statutory six-month waiting period expired, the "Estate of Steven Gavin," as named plaintiff, commenced suit under the Act alleging wrongful death. At the time of filing suit, no Probate and Family Court filings had yet been undertaken, and no executor or administrator (or temporary executor or administrator) of Gavin's estate had been appointed.

On May 4, 2011, the defendants moved to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), asserting two grounds, each of which derived from the failure of appointment of a legal representative authorized to institute a wrongful death action. The defendants asserted that (1) there was no duly appointed personal representative of the estate empowered to bring suit, and (2) the presentment pursuant to

---

[2] The presentment coordinator in the Attorney General's office forwarded the presentment to the Executive Office of Health and Human Services on July 29, 2010.

G. L. c. 258, § 4, was deficient for the same reason. The plaintiff promptly opposed the motion and made some preliminary attempts to address the fact that there was no duly appointed personal representative empowered to bring the wrongful death action. On May 10, 2011, Thomas and Mary were appointed temporary coexecutors of Gavin's estate. As well, on May 13, 2011, the plaintiff moved to amend the complaint, bringing it in the name of "James T. Gavin and Mary Gavin, as Coexecutors of the Estate of Steven Gavin."[3]

After hearing on July 19, 2011, the motion judge allowed the defendants' motion to dismiss and denied the plaintiff's motion to amend. The judge reasoned that the plaintiff's presentment was deficient because it was not that of a "claimant," an executor or administrator with the capacity to commence suit or settle the wrongful death claim. We agree. The failure of an authorized claimant to make a presentment within the two-year period prescribed by G. L. c. 258, § 4, was a fundamental obstacle to suit under the Act.

Even beyond that impediment, an independent justification existed for dismissal of the action as it stood before the Superior Court judge: the complaint for wrongful death was not brought by the duly authorized executor or administrator on behalf of the heirs at law and next of kin. See *MacDonald* v. *Moore*, 358 Mass. 801, 801 (1970) (no action may be brought under wrongful death statute, G. L. c. 229, § 2, "unless it is brought by the decedent's executor or administrator"). Only an executor appointed under G. L. c. 192, § 4, may bring a wrongful death action, not a temporary executor appointed pursuant to G. L. c. 192, § 14. See *Marco* v. *Green*, 415 Mass. 732, 736-737 (1993) (G. L. c. 192, § 14, limits ability of temporary executor to bring legal action and only executor appointed under G. L. c. 192, § 4, may bring wrongful death action). Thus, even had the presentment been proper, on the record before the motion judge,

---

[3] As the Commonwealth had not yet filed a responsive pleading, the plaintiff was free to file an amended complaint as matter of right and without leave of court. See Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974). Neither the plaintiff's opposition nor its motion to amend requested the Superior Court judge to stay action on the Commonwealth's motion to dismiss pending appointment of coexecutors. Indeed, the amended complaint erroneously identified Thomas and Mary as coexecutors when they were but temporary coexecutors.

the suit itself was properly dismissed because it was not commenced or maintained by a party with the legal authority to do so.[4]

2. *Discussion.* General Laws c. 258 establishes a special procedure for claimants to bring tort claims against governmental entities that previously were barred by sovereign immunity. See *Audette* v. *Commonwealth*, 63 Mass. App. Ct. 727, 734-735 (2005) (Act abolished general sovereign immunity while retaining Commonwealth's immunity for certain stated types of actions). As pertinent here, G. L. c. 258, § 4, inserted by St. 1978, c. 512, § 4, provides:

> "A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless *the claimant* shall have first presented his claim in writing . . . within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing . . . . The failure of the executive officer to deny such claim in writing within six months after the date upon which it is presented, or the failure to reach final arbitration, settlement, or compromise of such claim according to the provisions of section five, shall be deemed a final denial of such claim. No civil action shall be brought more than three years after the date upon which such cause of action accrued." (Emphasis supplied.)

Although not jurisdictional, proper presentment is a condition precedent to bringing suit under the Act. See *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 52, 56 (1982). While it is tempting to view the presentment requirements as mere technicalities, presentment serves important public purposes, including ensuring that the responsible public official receives timely notice so that he can (1) investigate to determine whether a claim is valid, (2) settle valid claims expeditiously and preclude payment of inflated or nonmeritorious claims, and (3) take steps

---

[4]Although not part of the record before the judge, or before this court, the plaintiff asserts in his reply brief that on July 27, 2011, subsequent to hearing on the Commonwealth's motion to dismiss, Thomas and Mary were appointed coexecutors of the "Estate of Steven J. Gavin." No record of that appointment was ever filed or entered on the docket. Nor did the plaintiff ever seek to amend the complaint on that basis prior to dismissal.

to ensure that similar claims will not be brought in the future. *Lodge* v. *District Attorney for the Suffolk Dist.*, 21 Mass. App. Ct. 277, 283 (1985). Establishing presentment as a mandatory prerequisite to suit reflects a legislative choice to permit the public employer to investigate any claim in full and to negotiate, arbitrate, compromise, or settle any such claim as it sees fit. See *Weaver* v. *Commonwealth*, 387 Mass. 43, 47-48 (1982); *Holahan* v. *Medford*, 394 Mass. 186, 189 (1985). "The presentment requirement envisions arbitration, compromise, or settlement of claims. See G. L. c. 258, § 5." *Pickett* v. *Commonwealth*, 33 Mass. App. Ct. 645, 647 (1992). To further these purposes, the presentment requirement is strictly enforced without need for the public employer to show prejudice from a defective presentment. See *Weaver* v. *Commonwealth, supra* at 49; *Martin* v. *Commonwealth*, 53 Mass. App. Ct. 526, 528-529 (2002); *Bellanti* v. *Boston Pub. Health Commn.*, 70 Mass. App. Ct. 401, 406 (2007).

The parties do not dispute that Gavin's death on August 11, 2008, triggered commencement of the two-year presentment period, and that proper presentment must have occurred by August 11, 2010. Nor do the parties dispute that the July 21, 2010, letter from the attorney was timely, see *Weaver* v. *Commonwealth, supra* at 45; was directed to the appropriate executive officer of the public employer, see *Lodge* v. *District Attorney for the Suffolk Dist., supra* at 279-281; and was sufficiently detailed to identify the legal basis of the claimed wrong, see *Gilmore* v. *Commonwealth*, 417 Mass. 718, 723 (1994); *Martin* v. *Commonwealth, supra* at 528-529. The sole disputed issue is whether the presentment was that of a "claimant" within the meaning of the Act. We agree with the motion judge that it was not.

Unlike other terms in G. L. c. 258, § 4, "claimant" is not defined in the Act. See G. L. c. 258, § 1. "When the words of a statute are clear, they are to be given their ordinary and natural meanings. If the meanings are unclear, the statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and

the main object to be accomplished, to the end that the purpose of its framers may be effectuated. In addition, a statute should be read as a whole to produce an internal consistency." *Adoption of Marlene,* 443 Mass. 494, 497-498 (2005) (quotations and citations omitted).

With these principles in mind, we conclude that a "claimant" under the Act must be someone with the legal capacity to make the "claim." The power to negotiate, arbitrate, compromise, or settle the claim derives from the power to maintain it in the first instance. See *Marco* v. *Green,* 415 Mass. at 735 n.9. In most cases, the "claimant" will be the person injured, acting personally or through an attorney. Consequently, the public employer will know with whom it must deal to further the statutory purposes of presentment. The situation differs when the "claimant" is deceased.[5] Such is especially true when, as here, the claim is for wrongful death. The wrongful death statute, G. L. c. 229, § 2, sets forth with specificity the procedural requirements that control such an action. See *Gaudette* v. *Webb,* 362 Mass. 60, 71 (1972) (wrongful death statute establishes procedural requirements for recovery of damages, including that action be brought by personal representative on behalf of designated categories of beneficiaries).[6] The statute prescribes that damages for wrongful death or injuries causing death "shall be recovered in an action of tort by the executor or administrator of the deceased." G. L. c. 229, § 2, inserted by St. 1958, c. 238, § 1. Interpreting this requirement, the court has held that "[n]o action . . . can be maintained for death . . . unless it is brought by the decedent's executor or administrator." *Mac-*

---

[5]Where the claim under the Act is for negligence only, such a claim survives the death of the injured party. See G. L. c. 228, § 1(2) (governing the survival of actions). In that circumstance, the "claimant" would be the executor or administrator of the injured party. See *Harrison* v. *Loyal Protective Life Ins. Co.,* 379 Mass. 212, 219 (1979) (administratrix could proceed with decedent's tort claim, which survived his death under G. L. c. 228, § 1).

[6]The statute authorizes consortium-type damages for the next of kin, see G. L. c. 229, § 2, and conscious suffering damages on behalf of the estate. See G. L. c. 229, § 6. It is well established that the money recovered under § 2 is not generally an asset of the probate estate "but constitutes a statutory trust fund held by the executor or administrat[or] as trustee for distribution to the statutory beneficiaries." See *Sullivan* v. *Goulette,* 344 Mass. 307, 311 (1962); *Bratcher* v. *Galusha,* 417 Mass. 28, 29-31 (1994); *Bratcher* v. *Moriarty, Donoghue & Leja, P.C.,* 54 Mass. App. Ct. 111, 114 (2002).

*Donald* v. *Moore*, 358 Mass. at 801. See *Matsuyama* v. *Birn-baum*, 452 Mass. 1, 24 n.39 (2008) (affirming holding of *Gaudette* v. *Webb, supra* at 71, regarding requirements of statute, including who may bring action). See also *Marco* v. *Green, supra* at 735-736. The plaintiff's suggestion that the term "claimant" encompasses an attorney with a good faith basis to bring a claim mistakenly conflates an attorney's authority to assert a claim on behalf of a client with whether the client has the capacity to make the claim in the first instance. Had the Legislature intended such authority, it could have so provided. Rather, the Act's framework manifests the Legislature's considered judgment that the "claimant" should have the requisite legal capacity at all stages of the proceedings. See G. L. c. 258, §§ 3 (initiation of civil action), 4 (presentment), 5 (settlement), 7 (same), & 11 (judgment for costs of frivolous actions). Were it otherwise, the public employer would be at risk of expending limited public resources investigating, negotiating, and compromising a claim that could not be brought to finality or that placed it at risk of repeated defense against the same claim. See *Marco* v. *Green, supra.* Accordingly, we hold that where the claim under the Act is for wrongful death, the claimant for purposes of the G. L. c. 258, § 4, presentment must be the duly appointed executor or administrator of the deceased.

Here, the claimant was not the duly appointed executor or administrator of Gavin's estate. In consequence, a condition precedent to suit under the Act was not met. See *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. at 52. The subsequent appointment of an executor or administrator did not, and could not, timely cure that failed presentment. "[T]he relation back principles of Mass.R.Civ.P. 15(c) . . . have no application to the presentment requirement of the Act." *Weaver* v. *Commonwealth*, 387 Mass. at 48.[7]

We reject any suggestion that the Commonwealth's response lulled the plaintiff into a false sense of security that its present-

---

[7]Similarly, G. L. c. 231, § 51, and Mass.R.Civ.P. 17(a), as amended, 454 Mass. 1401 (2009), which allow the substitution of parties or other amendment, do not avail the plaintiff where the failure is to make the required presentment under the Act.

ment met statutory requirements. See *Bellanti* v. *Boston Pub. Health Commn.*, 70 Mass. App. Ct. at 407. The response carried no express or implied promise that the Commonwealth would not challenge the claimant's legal capacity any more than that it would not challenge the substance of the claim. The Act does not place upon the public employer the duty to investigate the legal capacity of a claimant ab initio. Nor was there anything in the presentment that would have triggered such inquiry. To the contrary, the presentment's assertion that the attorney represented "the Estate of Steven Gavin and his individual children" suggested that formal steps had been taken to probate the estate and obtain the appointment of the executor or administrator necessary to file a wrongful death claim when no such actions had been undertaken.

The judge did not err in concluding that the presentment was improper because the claimant lacked the legal capacity to make a presentment for wrongful death. Apart from the failure of presentment, the complaint for wrongful death also could not properly be maintained and was subject to dismissal because it had not been brought by the duly authorized executor or administrator on behalf of the heirs at law and next of kin as required by statute. The judgment dismissing the complaint is affirmed.

*So ordered.*

AGNES, J. (dissenting). The outcome of this appeal turns principally on the proper interpretation of the word "claimant" as it appears in the first sentence of G. L. c. 258, § 4, inserted by St. 1978, c. 512, § 4, the Massachusetts Tort Claims Act (Act). That sentence reads in part as follows: "A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . . ."[1]

---

[1] The first paragraph of G. L. c. 258, § 4, in its entirety, reads as follows:

"A civil action shall not be instituted against a public employer on a

The majority assigns a technical meaning to the term "claimant" that I believe is contrary to the meaning that the Legislature instructs us to give it. "Words and phrases shall be construed according to the common and approved usage of the language . . . ." G. L. c. 4, § 6, Third.[2] The ordinary and approved usage of the word "claimant" is simply "one that asserts a right or title." See, e.g., Webster's Third New Intl. Dictionary 414 (1993); Black's Law Dictionary 282 (9th ed. 2009) ("One who asserts a right or demand"). In our Act, the Legislature chose to give some words (but not the word "claimant") a technical meaning by including them in a definitional section. See G. L. c. 258, § 1. Moreover, in the same sentence in G. L. c. 258, § 4, in which the word "claimant" appears, the Legislature used the word "claim," which, like "claimant," is not defined in the Act and was not used by the Legislature in a technical sense. See *Gilmore* v. *Commonwealth*, 417 Mass. 718 (1994) (presentment letter was adequate to state a "claim" for damages on behalf of the decedent's brother, the administrator of the estate, and certain other family members even though it made no reference to any specific causes of action and the factual basis for the "claim" was limited to portions of a complaint in a Federal lawsuit brought on behalf of the decedent's estate). In that case, the Supreme Judicial Court explained that a

claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. The failure of the executive officer to deny such claim in writing within six months after the date upon which it is presented, or the failure to reach final arbitration, settlement or compromise of such claim according to the provisions of section five, shall be deemed a final denial of such claim. No civil action shall be brought more than three years after the date upon which such cause of action accrued. Disposition of any claim by the executive officer of a public employer shall not be competent evidence of liability or amount of damages."

[2]The paragraph in question goes on to state that "technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning." G. L. c. 4, § 6, Third.

presentment letter satisfies the purposes behind the Act, and thus is satisfactory, "so [long] as it is not so obscure that educated public officials should find themselves baffled or misled . . . ." *Id.* at 723. In the case before us, the public officials who investigated the claim were expressly made aware, in a timely fashion, as described below, that Steven J. Gavin had died; that his death was alleged to be the result of negligence by the Commonwealth or the Tewksbury State Hospital; that the claim was brought on behalf of "the Estate of Steven Gavin and his individual children, Stephanie and Jessica"; and that the claim was being prosecuted by an attorney whose address, telephone number, and electronic mail (e-mail) address were included.

The reasoning of the majority, in my view, is contrary to the express direction by the Legislature to construe the provisions of the Act "liberally" to accomplish its dual purposes, namely, "to allow plaintiffs with valid causes of action to recover in negligence against governmental entities," and to provide government with the ability to pay "only those claims . . . which are valid in amounts which are reasonable and not inflated." *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 57 (1982), citing St. 1978, c. 512, § 18. In the present case, the responsible public officer had timely notice of an alleged wrongful death due to the negligence of a public employee or employees and ample documentation of the theory of liability. The conclusion reached by the majority that the written presentment was nonetheless defective finds no support in the numerous cases which have applied and explained the purposes of G. L. c. 258, § 4, and collides with the overarching understanding that the Act "is not intended to afford an arbitrary or trick means of saving governmental entities from their just liabilities." *Carifio* v. *Watertown*, 27 Mass. App. Ct. 571, 576 (1989). Accordingly, I respectfully dissent.

In order to understand why the presentment letter filed by the plaintiff in this case complied fully with the requirements of G. L. c. 258, § 4, it is necessary to relate additional background about this case.

*Additional background.* On or about July 21, 2010, the plaintiff's counsel sent a letter, by certified mail, to the Attorney General and the chief executive officer of the Tewksbury

State Hospital captioned "DEMAND FOR RELIEF UNDER M.G.L. c. 258 ON BEHALF OF THE ESTATE OF STEVEN GAVIN." In this letter, he informed the addressees (1) that his office represented "the Estate of Steven Gavin and his individual children, Stephanie and Jessica"; (2) that he was making "a demand for relief" under "General Laws Chapter 258"; and (3) that the negligence of "the Commonwealth . . . and/or Tewksbury State Hospital . . . was a legal proximate cause of substantial injury and death to Mr. Gavin." The letter also contained a detailed statement of facts giving rise to the demand for relief. The letter explained that in the summer of 2008 Gavin, who suffered from Huntington's disease, was a patient at the Tewksbury State Hospital. A gastrostomy tube that had been placed in his abdomen by a physician at Saints Medical center in Lowell became dislodged and was reinserted by a staff person at Tewksbury State Hospital on or about July 26, 2008. The letter then detailed an infectious process that began thereafter in which there were observations made of "purulent drainage spilling out around the [gastrostomy] tube site," and which resulted in the patient being extremely uncomfortable. The letter also stated that by August 8, 2008, Gavin "was having difficulty breathing and had turned blue." He was initially transported to Saints Memorial Hospital and later to Massachusetts General Hospital. Gavin died on August 11, 2008. The autopsy report, which counsel attached to his letter, stated that "the findings are most consistent with leak from the gastrostomy tube as the cause of the peritonitis."

Shortly thereafter, and one week before the expiration of the two-year period within which a plaintiff who wishes to bring suit against a public employer, like the Tewksbury State Hospital, must file a written presentment of his claim, see G. L. c. 258, § 4, the plaintiff's counsel received a copy of a letter from the Attorney General's office. It was directed to the general counsel of the Executive Office of Health and Human Services, enclosing a copy of the July, 2010, presentment letter and requesting that the general counsel "investigate this claim and notice this Office of the results in accordance with the Attorney General's Presentment Procedures for Agencies of the Commonwealth (June 30, 2001)." About one month later, on August 30, 2010,

plaintiff's counsel received a letter from the general counsel of the Executive Office of Health and Human Services confirming receipt of his "claim . . . pursuant to the state tort claims act, G. L. c. 258." The letter stated that "[d]uring the next few months, we will be reviewing your claim to determine whether a settlement offer is warranted and will notify you promptly of the outcome of our review."[3] Neither the letter written by the presentment coordinator for the Attorney General nor the letter written by the general counsel of the Executive Office of Health and Human Services made any reference to any defects in the presentment letter.

On or about March 22, 2011, having not received any further communication from the Attorney General or from the general counsel of the Executive Office of Health and Human Services, plaintiff's counsel followed the recommendation made in the letter from the general counsel and filed the lawsuit that is the subject of this appeal.

*There was compliance with G. L. c. 258, § 4.* I agree with the majority that written presentment in a timely manner to the proper public employer "is mandatory to permit the responsible executive officers to investigate, negotiate, and settle claims." *Martin* v. *Commonwealth*, 53 Mass. App. Ct. 526, 529 (2002). However, the majority overstates the significance of judicial language in *Weaver* v. *Commonwealth*, 387 Mass. 43, 49 (1982), that requires strict compliance with the law. In that case, the court held that a violation of G. L. c. 258, § 4, consisting of a presentment made to the wrong public employer will not be excused even in the absence of an affirmative showing by the Commonwealth that it was prejudiced. Also, in *Bellanti* v. *Boston Pub. Health Commn.*, 70 Mass. App. Ct. 401, 406 (2007), cited as well by the majority, the presentment was similarly defective because it was sent to the wrong public employer.[4]

As we noted in *Martin* v. *Commonwealth, supra* at 528-529,

---

[3]In addition, this letter explained that if there should be no reply within the six-month period provided in G. L. c. 258, § 4, "you should regard your claim as denied."

[4]In that case, the court declined to apply either of two exceptions to the requirement that compliance with G. L. c. 258, § 4, is mandatory. The court held that there was no basis to excuse compliance on grounds that at a time when the defect in the presentment could have been cured, the plaintiff was

the "oft-recited proposition" from *Weaver* v. *Commonwealth*, *supra* at 47 (and this applies to *Bellanti* v. *Boston Pub. Health Commn.*, *supra*, as well), that presentment must be made "in strict compliance with the statute" "is concerned more with whether presentment has been made to the proper executive officer (proper party noticed) in a timely fashion (timeliness) than with the content of the presentment (adequacy of content)." This is because "the presentment requirement is not intended to demand such rigid particularization as to reincarnate sovereign immunity and bar legitimate claims for failing to invoke perfectly the correct 'Open Sesame.' " *Martin* v. *Commonwealth*, *supra* at 530. The majority reasons, like the trial judge below, that the purpose of presentment is frustrated unless the "claimant" is "someone with the legal capacity to make the 'claim.' " *Ante* at 144. While I also concur with the majority that only a properly empowered representative of the beneficiaries of a decedent's estate can prosecute an action for wrongful death, I do not find persuasive the majority's reasoning that the "framework [of G. L. c. 258] manifests the Legislature's considered judgment that the 'claimant' should have the requisite legal capacity at all stages of the proceedings." *Ante* at 145.

First, the presentment letter filed by plaintiff's counsel in this case states that he represents the "Estate of Steven Gavin" as well as "his individual children, Stephanie and Jessica." Under Massachusetts law, the children are the persons entitled to recover damages for the wrongful death of their father. See G. L. c. 229, §§ 1, 2.[5] While it is true, as the majority explains, that neither at the time the presentment letter was filed in 2010 nor at the time this lawsuit was filed in 2011 was there a party in existence with the legal authority to maintain or to commence the wrongful death action, *ante* at 141, citing *Marco* v. *Green*, 415 Mass. 732, 736-737 (1993), I do not believe this detracts in any way from the adequacy of the presentment letter. It is reasonable to assume, I submit, that the highly trained and experienced

"lulled" into believing that the issue of a defective presentment would not be raised (estoppel exception); further, the court declined to find that despite the defective presentment there was evidence that the proper public employer had "actual notice." *Bellanti* v. *Boston Pub. Health Commn.*, *supra* at 406-408.

[5]There is no evidence in the record before us that the decedent was survived by a spouse.

lawyers in the office of the Attorney General and the Executive Office of Health and Human Services who undertook the investigation of the claim described in the presentment letter were aware of the decision in *Marco* v. *Green, supra.* Therefore, there is no reason to believe that if they believed that the public employer should attempt to settle this case they would not also have understood that the only party who could execute a legally binding release would be a properly appointed executor. Thus, just as in *Gilmore* v. *Commonwealth*, 417 Mass. at 723, it is not reasonable to say that the presentment letter in this case could have "baffled or misled" the public employer, its counsel, or its agents. And, given that the Supreme Judicial Court has observed that the boundaries of sovereign immunity should be defined by "considerations of justice and public policy," *Morash & Sons, Inc.* v. *Commonwealth*, 363 Mass. 612, 623 (1973), we should not assign a technical meaning to terms used by the Legislature, like "claimant," unless the Legislature has given us such a meaning in a statutory definition or otherwise directed us to assign the term a technical meaning.[6]

Second, I believe the majority's reasoning is at odds with the Massachusetts tradition, now embodied in Mass.R.Civ.P. 15(c), 365 Mass. 761 (1974); Mass.R.Civ.P. 17(a), as amended, 454 Mass. 1401 (2009); and G. L. c. 231, § 51, that actions that are not commenced in the name of the party in interest or who is required to bring the action shall not be dismissed until a reasonable amount of time is allowed after objection for the deficiency to be corrected. It is true that this liberal policy allowing the relation back of amendments to the pleadings and the substitution of parties has been described as not applicable to the requirement of a written presentment. See *Weaver* v. *Commonwealth*, 387 Mass. at 48. However, there is no indication in that case, where the presentment was not filed with the correct public employer, that in declining to apply the relation back doctrine, the Supreme Judicial Court was referring to anything other than the requirement that the claimant must give timely notice of the claim to the correct public employer. It

---

[6]If the public employer in this case ever gave serious consideration to compromising the claim, a simple telephone call or e-mail to plaintiff's counsel might have resolved the legal issue that has led to this appeal.

seems odd, to say the least, that our relation back doctrine applied in a wrongful death lawsuit in which the complaint was filed in the wrong party's name and the correct plaintiff was not appointed as the administrator until months after the complaint had been filed, by which time the statute of limitations had expired, *Mellinger* v. *West Springfield*, 401 Mass. 188, 193 (1987), but to say in this case, as the majority does, that the relation back doctrine is not applicable. Just as *Mellinger* v. *West Springfield, supra* at 194, turned on the fact that there was no "unfair surprise" because there was "ample reason to view the named plaintiff as the real party in interest," so too in this case there is no evidence that the public employer was unfairly surprised.

Third, the predominant view of Federal courts that have considered how to apply the administrative claim provision set forth in 28 U.S.C. § 2675(a) (2006)[7] and 28 C.F.R. § 14.3(c) (2012),[8] which parallel G. L. c. 258, § 4,[9] is that notwithstanding the jurisdictional character of the requirement under Federal

---

[7]The Federal statute governing the administrative claim procedure reads in part as follows:

> "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim."

[8]"A claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law." 28 C.F.R. § 14.3(c).

[9]In *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 54 (1982), the Supreme Judicial Court observed that "General Laws c. 258 is modeled closely on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (1976). . . . The Federal act requires, as does c. 258, that a plaintiff file an administrative claim prior to bringing suit. 28 U.S.C. § 2675 (1976). This Federal requirement has been held to be a jurisdictional prerequisite to bringing

law, an administrative claim is not deficient even though at the time it is filed the claimant was not legally qualified to prosecute the claim. *Dawson ex rel. Estate of Dawson* v. *United States*, 333 F. Supp. 2d 488, 493 (D.S.C. 2004) (holding that the relation back doctrine under State law cured an otherwise adequate administrative claim for wrongful death that was filed by the decedent's widow who at the time had been discharged as the legal representative of the estate).[10] Accord *McDavid* v. *United States*, 292 F. Supp. 2d 871 (S.D. W. Va. 2003); *Wozniak* v. *United States*, 701 F. Supp. 259 (D. Mass. 1988).

*Recommended disposition.* For the foregoing reasons, the presentment letter filed by plaintiff's counsel on July 21, 2010, was timely, substantively detailed, directed to the proper public employer, and, I believe, otherwise adequate in identifying the claimant to the extent required by G. L. c. 258, § 4. For this reason, I believe the judge erred in allowing the defendant's motion to dismiss. I would order the judgment vacated and remand the matter to permit the plaintiff to file another motion to amend the complaint under Mass.R.Civ.P. 15(c) and 17(a), and G. L. c. 231, § 51.[11]

---

suit, which cannot be waived by the defendants. When the Legislature, in enacting a statute, adopts the language of a Federal statute, we will ordinarily construe the Massachusetts statute in accordance with the construction given the cognate Federal statute by the Federal courts. We do not follow the Federal precedent, however, when the Federal result is dictated by some principle of Federal law not found in the law of Massachusetts." (Citations omitted.)

[10]In *Dawson, supra*, the court added that this is the view taken by all the Circuit Courts of Appeal that have addressed the question.

[11]The record indicates that the complaint was filed on March 24, 2011. James T. Gavin (James) and Mary Gavin (Mary) are the parents of the decedent who were named as coexectuors in the will of Gavin and who, on May 10, 2011, were appointed by a Probate and Family Court judge as "temporary executors." The plaintiffs filed a motion to amend the complaint on May 13, 2011, by substituting James and Mary, as coexecutors of Gavin's estate, as party plaintiffs. Thus, the majority is correct that at the time the motion to amend was filed, James and Mary had not been appointed coexecutors but, instead, were only temporary coexecutors of Gavin's estate. The defendants filed a motion to dismiss the complaint on May 27, 2011, accompanied by a memorandum of law arguing that the presentment was defective because it was not made by an authorized representative of the estate. The matter came before the judge for hearing on July 19, 2011. On November 21, 2011, the judge denied the plaintiff's motion to amend "on grounds of futility." On November 25, 2011, the judge filed his memorandum of decision in which he

allowed the defendants' motion to dismiss on grounds that the presentment letter did not comply with G. L. c. 258, § 4, because at the time the claim was presented, an executor had not been appointed. A judgment of dismissal entered in accordance with the judge's decision on the same day.

If, as I have suggested, the judge was in error in allowing the motion to dismiss on grounds that the presentment letter was defective, the question arises whether we should vacate the judgment because, as the majority points out, the record before the judge at the time the motion to dismiss was allowed did not reflect that a duly appointed executor of the estate capable of prosecuting a wrongful death action had been appointed. *Ante* at 141. The majority reasons that the decision below should be affirmed because the trial judge could have dismissed the case on alternative grounds (lack of duly appointed executor or administrator at the time of the hearing). *Ante* at 141-142. I do not believe an appellate court is duty bound to affirm a judgment for reasons other than those given by the judge in these circumstances. Compare *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 210 n.6 (1993).

The material facts in this case may have changed between the motion hearing held on July 19, 2011, and the decisions made by the judge on November 21 and November 25, 2011. The reply brief filed by the plaintiff includes a copy of a decree of the Middlesex Division of the Probate and Family Court Department which indicates that James and Mary were appointed coexecutors of the estate of Gavin on July 27, 2011, after the date of the hearing on the defendant's motion to dismiss but prior to the judge's ruling dismissing the plaintiff's motion to amend on grounds of futility. The reply brief also contains what purports to be a copy of a letter from counsel for the plaintiff to the judge dated July 27, 2011, enclosing a copy of the appointment of James and Mary as coexecutors. The reply brief states that the appointment of the parents as coexecutors occurred on July 27, 2012, but I take that to be a typographical error.

Even if James and Mary were appointed as coexecutors on July 27, 2011, as the plaintiff maintains, I do not know if that fact was ever brought to the attention of the judge prior to November, 2011. There is no indication that after the judge's two decisions there was a motion for reconsideration filed by the plaintiff. Nevertheless, if, as the plaintiff maintains, James and Mary were duly appointed as coexecutors as early as July 27, 2011, a factual basis for a motion to amend the complaint existed prior to the running of the statute of limitations and prior to the judge's order dismissing the complaint for noncompliance with G. L. c. 258, § 4. Therefore, if, as I have suggested, the judge was in error in allowing the motion to dismiss on grounds that the presentment letter was defective and the case is remanded, the plaintiff could file another motion to amend and appeal to the judge's discretionary authority to act "in the interests of justice." See G. L. c. 231, § 51; Mass.R.Civ.P. 15(c), 17(a). See *Henderson* v. *D'Annolfo*, 15 Mass. App. Ct. 413, 428 (1983) ("Where there are no allegations of unfair surprise or prejudice, we are not inclined to dismiss an action because of a possible technical defect in pleading . . . , particularly where . . . there is ample reason to view the named plaintiff as the real party in interest," and even if the plaintiff were not, "we would permit amendment of the complaint"). I do not believe this court should deprive the plaintiff of an exercise of the judge's discretion in these circumstances.