ESTATE OF STEVEN GAVIN *vs.* TEWKSBURY STATE HOSPITAL
& another.[1]

Middlesex. January 6, 2014. - May 15, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Tort Claims Act. Wrongful Death. Practice, Civil,* Presentment of claim under Massachusetts Tort Claims Act, Wrongful death, Standing. *Negligence,* Wrongful death. *Executor and Administrator,* Governmental claims. *Words,* "Claimant."

In a civil action brought against the Commonwealth and a State hospital under the Massachusetts Tort Claims Act, G. L. c. 258 (act), seeking damages on account of the death of the plaintiff's decedent, allegedly by negligent conduct on the part of hospital staff members, the presentment made by the decedent's estate through its attorney, and not by the duly appointed executor or administrator of the estate, met the requirements for presentment of a claim by a "claimant" under G. L. c. 258, § 4, where there is no indication in the language of the act, considered on its own, that in using the word "claimant," the Legislature intended to address the legal authority of the person making the claim and, in particular, that person's legal authority to file a civil action in court if that claim were administratively denied; and where interpreting "claimant" in its ordinary sense (i.e., one who asserts a right or demand) strikes the appropriate balance between the act's dual purposes of allowing plaintiffs with valid causes of action to recover in negligence against governmental entities and preserving the stability and effectiveness of government [127-135]; however, where, under G. L. c. 229, § 2, an action for wrongful death must be brought by the executor or administrator of the decedent's estate, the estate was free on remand to seek leave to amend its complaint to address the issue concerning the identity of the proper plaintiff [135-136].

CIVIL ACTION commenced in the Superior Court Department on March 24, 2011.

A motion to dismiss was heard by *Garry V. Inge,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert S. Sinsheimer* for the plaintiff.

*Mark P. Sutliff,* Assistant Attorney General, for the defendants.

---

[1] Commonwealth.

*J. Michael Conley, Thomas R. Murphy, & Elizabeth N. Mulvey,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

BOTSFORD, J. The estate of Steven Gavin (estate) commenced this action for wrongful death in the Superior Court against the Commonwealth and Tewksbury State Hospital (hospital) under the Massachusetts Tort Claims Act (act), G. L. c. 258. The estate seeks to recover damages on account of the death of Steven Gavin (decedent), a death allegedly caused by negligent conduct on the part of hospital staff members. The primary issue before us is whether the statutory requirements for presentment of a claim under the act, see G. L. c. 258, § 4 (§ 4), were met when the presentment was made by the estate (through its attorney), and not by the duly appointed executor or administrator of the estate. Ruling on the defendants' motion to dismiss the complaint, a judge concluded that the presentment requirement was not met in these circumstances, and allowed the motion. A divided panel of the Appeals Court affirmed. *Estate of Gavin* v. *Tewksbury State Hosp.,* 83 Mass. App. Ct. 139 (2013). The case is before us on further appellate review. We conclude that in the circumstances of this case, the presentment made by the estate was proper. We therefore vacate the judgment of the Superior Court.

1. *Background.* The decedent died on August 11, 2008. In the weeks preceding his death, he was receiving inpatient care at the hospital for Huntington's disease; the estate claims that his death was caused by a bacterial infection due to the improper reinsertion of his feeding tube by the hospital's staff.[2] The decedent had a will in which, it is reported without dispute, he named his father James T. Gavin (Thomas) the executor of his estate. Although the record contains no specific information, there also appears to be no dispute that the decedent's two children are his sole heirs. After the decedent's death, Thomas retained counsel to assist with the estate, and that counsel thereafter referred this matter to the estate's present counsel

---

[2]The estate of Steven Gavin (estate) states that the cause of death listed on the death certificate was "fibrinopurulent organizing peritonitis, bilateral aspiration pneumonia." An autopsy report noted that "the findings are most consistent with leak from the gastronomy tube as the cause of the peritonitis."

(estate's counsel) who represents the estate as well as the decedent's parents, his two children, and the mother of his children.

On or about July 21, 2010, the estate's counsel sent a presentment letter pursuant to § 4 to the office of the Attorney General and to the chief executive officer of the hospital, alleging that the hospital's negligent reinsertion of the feeding tube and subsequent failure to monitor the decedent caused his death. Presentment was made "on behalf of the estate of Steven Gavin." In the letter, counsel indicated that he represented the estate and the decedent's children. At the time presentment was made, however, no executor or administrator of the estate had been formally appointed.

The Attorney General forwarded the presentment letter to the general counsel of the Executive Office of Health and Human Services, requesting that she investigate the claim.[3] On August 30, 2010, the general counsel sent a letter to the estate's counsel, acknowledging receipt of the claim and stating, "During the next several months, we will be reviewing your claim to determine whether a settlement offer is warranted . . . ."[4] The letter contained no indication that the presentment was defective.

On March 24, 2011, apparently after not having received any response from the Commonwealth to its presentment, the estate filed this action in the Superior Court against the hospital and the Commonwealth (collectively, the Commonwealth) pursuant to G. L. c. 258 and G. L. c. 229, § 2.[5] On May 27, 2011, the Commonwealth moved to dismiss, arguing that the presentment requirement of § 4 had not been met because presentment had not been made by a duly appointed personal representative of the estate and, as a separate matter, that the estate was not authorized to bring an action for wrongful death because under

---

[3]The record is not clear as to the date the presentment letter was received, but no one disputes that it was timely.

[4]The letter additionally stated, "We would appreciate your providing further information which would assist us in evaluating your claim."

[5]In the complaint, the estate alleges that it may bring suit against the Commonwealth and Tewksbury State Hospital (collectively, the Commonwealth) because the statutory six-month presentment waiting period, prescribed by G. L. c. 258, § 4 (§ 4), expired. The record does not indicate whether the Commonwealth investigated the claim or communicated with the estate during the presentment period.

G. L. c. 229, § 2, any such claim must be brought by the appointed executor or administrator of a decedent's estate.

On May 10, 2011, the decedent's parents, Thomas and Mary Gavin (collectively, the Gavins), were appointed temporary coexecutors of the estate by a judge in the Probate and Family Court. Shortly thereafter, in the Superior Court, the estate filed an opposition to the motion to dismiss and moved to amend its complaint to name the Gavins, "co-executors of the Estate of Steven Gavin," as the plaintiffs.[6]

After a hearing, the judge allowed the motion to dismiss in a written memorandum of decision and order.[7] Considering whether the presentment requirement had been met, the judge concluded that under § 4 a "claimant" for presentment purposes must be a person with the legal authority to arbitrate, compromise, or settle the claim; that a wrongful death claim can only be brought by the executor or administrator of a decedent's estate; and that, therefore, in this case, the claimant must be the appointed executor or administrator. The judge held that because the presentment here was made only by the estate, it was defective and dismissal of the complaint was required.[8]

The estate appealed, and the Appeals Court affirmed, substantially adopting the motion judge's rationale.[9] See *Estate of Gavin*, 83 Mass. App. Ct. at 144-145. One justice dissented,

---

[6]The first amended complaint erroneously identifies James T. and Mary Gavin (collectively, the Gavins) as coexecutors of estate when they were actually temporary executors, appointed pursuant to G. L. c. 192, §§ 13-16.

[7]The hearing on the motion to dismiss was held on July 19, 2011. In its reply brief filed in this court, the estate notes that on July 27, 2011, the Gavins formally were appointed executors of the estate. The estate asserts that it sent notice of these appointments to the Superior Court and counsel for the Commonwealth on the same day (July 27). No docket entry or anything else in the record indicates whether the notice was received by the Superior Court or, if so, provided to the judge. Accordingly, we do not know whether the judge became aware of the Gavins' appointments before allowing the Commonwealth's motion to dismiss.

[8]Having concluded that dismissal of the complaint was required on account of the allegedly defective presentment, the judge declined to address the Commonwealth's second ground for dismissal, namely, that the estate was not authorized to bring an action for wrongful death.

[9]In its opinion the Appeals Court further noted, however, that "[a]part from the failure of presentment, the complaint for wrongful death also could not properly be maintained and was subject to dismissal because it had not been brought by the duly authorized executor or administrator on behalf of the

concluding that in the circumstances of this case, the estate properly could serve as the claimant for purposes of meeting the presentment requirement in § 4. See *id.* at 146-155 (Agnes, J., dissenting). We granted the estate's application for further appellate review.[10]

2. *Discussion.* "Orders on motions to dismiss . . . are legal conclusions that this court reviews de novo." *Shapiro* v. *Worcester*, 464 Mass. 261, 266 (2013). In reviewing the judge's order in this case, like the Appeals Court, we consider two issues: (1) whether the presentment under § 4 was valid when made by the estate as the claimant before the appointment of an executor or administrator; and (2) whether the wrongful death action in any event must be dismissed because it was brought in the name of the estate rather than by a duly appointed executor or administrator.

a. *Meaning of "claimant" for purposes of presentment.* Enacted in 1978, see St. 1978, c. 512, § 15, the act makes public employers liable for property loss, injury, or death caused by the negligence of public employees acting within the scope of their employment. G. L. c. 258, § 2. *Weaver* v. *Commonwealth*, 387 Mass. 43, 45 (1982). The presentment requirement, set out in § 4, requires a claimant to "first present[] his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."[11] The public employer has six months from presentment to deny the claim or reach a settlement, and a failure to respond is

heirs at law and next of kin as required by statute." *Estate of Gavin* v. *Tewksbury State Hosp.*, 83 Mass. App. Ct. 139, 146 (2013).

[10]We acknowledge the amicus brief submitted by the Massachusetts Academy of Trial Attorneys.

[11]Section 4 provides in relevant part:

"A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. The failure of the executive officer to deny such claim in writing within six months after the date upon which it is presented, or the failure to reach final arbitration, settlement or compromise of such claim according to the provisions of

considered a denial. At the end of six months, the claimant may institute a civil action. Presentment is not jurisdictional but "a statutory condition precedent to recovery under G. L. c. 258." *Vasys* v. *Metropolitan Dist. Comm'n,* 387 Mass. 51, 55 (1982).

The parties do not dispute that the estate's presentment met the time requirement of § 4; was directed to the proper executive official, namely, the Attorney General on behalf of the Secretary of Health and Human Services, who is the "executive officer" in charge of the executive office ultimately responsible for the hospital; and described in sufficient detail a factual basis for the claimed negligence on the part of hospital staff. The sole question is whether the estate was a proper "claimant" within the meaning of § 4. As the judge recognized, the question arises because the estate's claim is for wrongful death, and under the Commonwealth's wrongful death statute, see G. L. c. 229, § 2, such an action must be brought by the executor or administrator of a decedent's estate.[12] See *MacDonald* v. *Moore,* 358 Mass. 801, 801 (1970) ("No action . . . can be maintained for death . . . unless it is brought by the decedent's executor or administrator").

We turn to the meaning of the term "claimant," mindful that "[a] term appearing in different portions of a statute is to be given one consistent meaning." *Chandler* v. *County Comm'rs of*

---

section five, shall be deemed a final denial of such claim. No civil action shall be brought more than three years after the date upon which such cause of action accrued. . . .

"Notwithstanding the provisions of the preceding paragraph, . . . in the case of the commonwealth, or any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof, presentment of a claim pursuant to this section shall be deemed sufficient if presented to the attorney general."

[12] General Laws c. 229, § 2, states in relevant part:

"A person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted . . . shall be liable in damages [in specified categories] . . . . *Damages under this section shall be recovered in an action of tort by the executor or administrator of the deceased.* An action to recover damages under this section shall be commenced within three years from the date of death, [subject to exceptions not applicable here]." (Emphasis added.)

*Nantucket County*, 437 Mass. 430, 436 (2002), citing *Arnold* v. *Commissioner of Corps. & Taxation*, 327 Mass. 694, 700 (1951). The act itself does not define the term. See G. L. c. 258, § 1. "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." *Commonwealth* v. *Bell*, 442 Mass. 118, 124 (2004), quoting *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). See G. L. c. 4, § 6, Third (legislative directive that nontechnical words and phrases in statutes "shall be construed according to the common and approved usage of the language"). "We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Seideman* v. *Newton*, 452 Mass. 472, 478 (2008), quoting *Commonwealth* v. *Zone Book, Inc., supra*. Here, the usual and accepted meaning of "claimant" is "[o]ne who asserts a right or demand." Black's Law Dictionary 282 (9th ed. 2009). See Webster's New World Law Dictionary 74 (2006) (defining "claimant" as "[a]n individual or entity who asserts a right or demand to money or property"). See also *Estate of Gavin*, 83 Mass. App. Ct. at 147 (Agnes, J., dissenting), quoting Webster's Third New Int'l Dictionary 414 (1993) (defining "claimant" as "one that asserts a right or title").[13]

The Commonwealth contends that because the term "claimant" is used in other sections of the act in contexts that, in its view, clearly require the claimant to have legal authority to sue, we are bound to conclude that the same holds true in the presentment context under § 4.[14] The Appeals Court agreed. See *Estate of Gavin*, 83 Mass. App. Ct. at 145. In any event, the Com-

---

[13]As mentioned earlier in the text, the Massachusetts Tort Claims Act (act), G. L. c. 258, was added by the Legislature in 1978. St. 1978, c. 512, § 15. The common meaning of "claimant" has remained relatively unchanged since the act was enacted. See American Heritage Dictionary of the English Language (1970) (defining "claimant" as one who makes "claim," which is "a demand for something as one's rightful due; affirmation of a right"); Black's Law Dictionary 314 (4th ed. 1968) (defining "claimant" as "[o]ne who claims or asserts a right, demand or claim"); Oxford American Dictionary 114 (1980) (defining "claimant" as one who makes "claim," which is "a demand for something as one's right").

[14]The Commonwealth lists the following sections of the act as referring to "claimant" in contexts where, it argues, legal authority is at least implicitly

monwealth continues, "[i]t is not sensible that the Legislature intended the word 'claimant' to mean someone who could assert a wrongful death claim without the requisite authority, where the same claimant could not initiate a civil proceeding, or bring the claim to finality during the presentment stage of the proceedings."

The Commonwealth's reasoning is not without force, but, like the dissenting justice in the Appeals Court,[15] we think it significant that, in the act, the Legislature did not choose to define "claimant" in the restricted manner suggested by the Commonwealth — despite including a section that contains very specific definitions of many of the act's significant, frequently used terms. See G. L. c. 258, § 1. The absence of a statutory definition is relevant because interpreting "claimant" in its ordinary sense still gives full effect to all provisions of the act. See *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998) (statute must be construed to give effect to all provisions).

In arguing that "claimant" must be understood to mean one with legal authority to bring suit on the claim, the Commonwealth appears to conflate the requirements of the act and the requirements of the wrongful death statute, G. L. c. 229, § 2. The Commonwealth, however, does not point to any support in the language or history of the act for this fused interpretation of the two statutes, and we have found none. The act makes no mention of a wrongful death claim. Rather, as the Appeals Court stated, it is far more typical that, when a claim is made under the act, the claimant has not died, but is "the person injured, acting personally or through an attorney." *Estate of Gavin*, 83 Mass. App. Ct. at 144. Further, the myriad concerns raised by the Commonwealth regarding the negative consequences of a wrongful death action brought by someone other than the executor or administrator of a decedent's estate appear to be rooted in a source considering only G. L. c. 229, and making no mention of the act.[16] See *Marco* v. *Green*, 415 Mass. 732 (1993). There is

---

required: § 3 (discussing terms under which "claimant" may bring civil action); § 4 (discussing presentment of claim); § 5 (discussing terms of "claimant['s]" acceptance of any award, compromise, or settlement under act).

[15] See *Estate of Gavin*, 83 Mass. App. Ct. at 147 (Agnes, J., dissenting).

[16] We discuss these concerns *infra*.

nothing intrinsic to the act that requires us to construe its terms in light of the requirements of G. L. c. 229, § 2, and we find no reason for doing so.

We do not find any indication in the language of the act, considered on its own, that in using the term "claimant," the Legislature intended to address the legal authority of the person making the claim, and in particular that person's legal authority to file a civil action in court if the claim were administratively denied. Thus, in construing the act, we adopt the ordinary meaning of "claimant" simply as one who asserts a right or demand.

Defining "claimant" in the way that we do finds support in the act's history and purpose. See, e.g., *Matter of the Liquidation of Am. Mut. Liab. Ins. Co.*, 440 Mass. 796, 801-802 (2004), quoting *Boylston* v. *Commissioner of Revenue*, 434 Mass. 398, 401 (2001) ("Because the statutory language 'does not provide a definite answer to the question, it is appropriate to consult other sources to obtain a resolution,' . . . including the relevant legislative history, insofar as it sheds light on the Legislature's purpose in enacting the section"). The act was passed in 1978 in response to "the Legislature's desire to abolish 'sovereign immunity and the crazy quilt of exceptions to sovereign immunity . . . which courts [had] stitched together.' " *Shapiro*, 464 Mass. at 266, quoting *Rogers* v. *Metropolitan Dist. Comm'n*, 18 Mass. App. Ct. 337, 338-339 (1984). See *Weaver*, 387 Mass. at 48-49. We are instructed to construe its provisions "liberally for the accomplishment of the purposes thereof." St. 1978, c. 512, § 18. See *Vasys*, 387 Mass. at 57. Two "equally important" purposes of the act are to "to allow plaintiffs with valid causes of action to recover in negligence against governmental entities . . . [and] to preserve the stability and effectiveness of government by providing a mechanism which will result in payment of only those claims against governmental entities which are valid, in amounts which are reasonable and not inflated." *Id*. Considering both purposes, we are to strike "[a]n appropriate balance . . . between the public interest in fairness to injured persons and in promoting effective government." *Id*., quoting *Whitney* v. *Worcester*, 373 Mass. 208, 216 (1977). Accord *McGrath* v. *Stanley*, 397 Mass. 775, 778-779 (1986); *George* v. *Saugus*, 394 Mass. 40, 43 (1985).

In the present case, interpreting "claimant" to include the estate strikes the "appropriate balance" between the act's dual purposes. See *Vasys*, 387 Mass. at 57, quoting *Whitney*, 373 Mass. at 216 (liberal interpretation of presentment requirement best achieves balance among act's purposes). At its core, the presentment requirement is about protecting the interests of the government, giving the Commonwealth and other public employers "the opportunity to investigate and settle claims and to prevent future claims through notice to executive officers." *Shapiro*, 464 Mass. at 268. The presentment made by the estate did not prevent or inhibit the Commonwealth from accomplishing any of these tasks — nothing about the presentment being made by the estate rather than an appointed executor or administrator interfered with the Commonwealth's ability to investigate the claim presented by the estate, to settle the claim if it chose to do so, or to take steps to prevent similar claims arising in the future.

Thus, with respect to investigation, there was never any ambiguity as to the identity of the individuals behind the claim presented by the estate: the presentment letter made the Commonwealth aware that the claim, although in the name of the estate, was made on behalf of the decedent's children, who were the persons entitled to recover under a successful wrongful death claim.[17] As such, the presentment would not have unfairly "baffled or misled" the "educated public officials" who received and investigated the claim. *Gilmore* v. *Commonwealth*, 417 Mass. 718, 723 (1994). Indeed, the Commonwealth does not argue that presentment in this case created any obstacle to its investigation. Certainly the letter from the general counsel of the Executive Office of Health and Human Services to the estate's counsel did not mention a concern about being prevented from conducting a full investigation of the claim because it had been proffered by the estate rather than the appointed executor or administrator.

As for settlement, the estate's presentment prevented the Commonwealth neither from initiating settlement discussions nor from ultimately settling with the estate. At the time of presentment, the estate may not have been authorized to reach a formal settlement and release, but we can discern no principled

---

[17]As his heirs, the decedent's children were his next of kin and therefore were entitled to recover damages. See G. L. c. 229, §§ 1 (4), 2.

reason to conclude that requiring such authority at the beginning of the six-month presentment period is, in itself, essential to the settlement process. Here, if the parties were to have reached a settlement agreement within the presentment period, the Commonwealth could have required the estate to ensure that an executor or administrator was appointed and to provide proof of that authority before signing off on a final resolution and payment.

Our cases requiring presentment to be made in strict compliance with the act are not to the contrary. See, e.g., *Weaver*, 387 Mass. at 47; *Bellanti* v. *Boston Pub. Health Comm'n*, 70 Mass. App. Ct. 401, 408 (2007). In *Weaver*, *supra* at 44-46, the issue was whether presentment was valid when it was sent to the wrong party — in that case, to the Commissioner of Mental Health and a hospital administrator rather than the Secretary of Human Services. We held that the presentment was defective, reasoning that proper presentment to the person with authority to settle the claim before a suit is filed is essential to fulfilling the purpose of the act. *Id.* at 47. See G. L. c. 258, § 5. In particular, presentment to the appropriate executive officer is critical because that officer alone is "charged with the over-all financial and budgetary responsibility" for the relevant agency or department and, as "[t]he highest officer," is in a unique position to not only initiate an investigation, "but also to make provision, during the budgetary process, for the payment of valid claims, and to institute promptly any corrective measures designed to reduce the number of valid claims in the future." *Weaver*, *supra* at 48.[18] Here, however, where the issue is whether presentment was made *by* the proper person, rather than *to* the proper person, these concerns are not implicated. See *Estate of Gavin*, 83 Mass. App. Ct. at 150-151 (Agnes, J., dissenting). Cf. *Martin* v. *Commonwealth*, 53 Mass. App. Ct. 526, 528-529 (2002) (considering content of presentment letter in light of *Weaver* and concluding that "close scrutiny discloses that the 'strict compliance' precept is concerned more with

---

[18]In *Bellanti* v. *Boston Pub. Health Comm'n*, 70 Mass. App. Ct. 401, 406-409 (2007), the Appeals Court considered largely the same issue and essentially applied the rule stated in *Weaver*, 387 Mass. at 47-48, to the facts before it.

whether presentment has been made to the proper executive officer [proper party noticed] in a timely fashion [timeliness] than with the content of the presentment [adequacy of content]").
There is no doubt that here, in accordance with *Weaver, supra* at 47-48, presentment was made to the proper executive officer who had adequate opportunity to investigate and, if necessary, to plan for settlement in light of her authority over the over-all budget. *Weaver* has no application here.

The Commonwealth argues that, as a general matter, the government's ability to settle is affected by allowing presentment to be made by a claimant without legal authority because doing so exposes a public employer to repeated liability and leaves the decedent's next of kin and beneficiaries unprotected. In support of its argument, the Commonwealth cites *Marco* v. *Green*, 415 Mass. at 732, a wrongful death case that did not concern the act at all.[19]

We disagree with the Commonwealth that *Marco* raises the specter of unprotected beneficiaries and repeated government liability under the act, or, more specifically, that the facts of this case present any such threat. *Marco* broadly stands for the proposition that, when negotiating, each party is responsible for making sure that the other has the requisite authority to negotiate and execute a settlement. See *Marco*, 415 Mass. at 736-739. The act can be read, at least implicitly, to recognize this point and to take steps to deal with it by requiring every settlement over $2,500 to be approved by the appropriate "public attorney"[20] or, in the case of a settlement involving the Commonwealth over

[19]In *Marco* v. *Green*, 415 Mass. 732 (1993), the decedent's daughter, acting as "voluntary administratrix" of the decedent's estate, negotiated a wrongful death settlement on behalf of the estate with the malpractice insurer of the private medical care provider responsible for the decedent's treatment and, in doing so, executed a purported binding release of all claims relating to the death on behalf of the decedent's family. See *id.* at 733 & n.5. Thereafter, the decedent's spouse, who was the appointed administratrix with the will annexed of the estate, filed a wrongful death action in the Superior Court under G. L. c. 229, § 2. *Id.* Considering whether the second claim was barred by the first, this court held that the voluntary administratrix had no legal authority to bring or settle a claim for wrongful death and, therefore, that the appointed administratrix could proceed with her claim regardless of the fact that the defendants previously had paid the voluntary administratrix a $375,000 settlement. *Id.* at 739.

[20]The term "[p]ublic attorney" is defined in part in G. L. c. 258, § 1, as

$20,000, by the Secretary of Administration and Finance; and further requiring that every agreed-upon settlement over $20,000 also must be approved by a Superior Court judge. See G. L. c. 258, §§ 5, 7. These requirements for attorney or executive review and approval in every case of some monetary significance suggest that the drafters of the act were aware of the need to ensure that settlements are only entered into carefully and after due consideration, but wished to charge public employers with the responsibility for doing so through their attorneys and executive officers — not the claimants.

In sum, it does not appear that the Commonwealth would suffer any prejudice from the presentment that it received. Adhering to the directive to strive for the appropriate balance between the Commonwealth's interests and the interests of the injured parties,[21] see *Vasys*, 387 Mass. at 57, we conclude that the term "claimant" as used in § 4 includes the estate in the circumstances of the present case. "[T]he presentment requirement is not intended to demand such rigid particularization as to reincarnate sovereign immunity and bar legitimate claims for failing to invoke perfectly the correct 'Open Sesame.' " *Martin*, 53 Mass. App. Ct. at 530. Demanding such stringency would elevate form over substance; we decline to do so.[22]

b. *Wrongful death claim.* The Commonwealth moved to dismiss the complaint on the separate ground that it was brought on behalf of the estate, thereby failing to meet the threshold requirement of G. L. c. 229, § 2. Although the judge declined to

---

"the attorney who shall defend all civil actions brought against a public employer pursuant to this chapter. In the case of the commonwealth he shall be the attorney general; in the case of any county he shall be the district attorney . . . ; in the case of a city or town he shall be the city solicitor or town counsel . . . ."

[21]There is no evidence in this case that the estate, in making the presentment itself rather than through an appointed executor or administrator, was guilty of misfeasance or of otherwise acting in bad faith.

[22]The parties raise multiple arguments regarding whether the relation back principles embodied in Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974), apply to presentment under § 4. The facts of this case do not require us to consider this issue, and we see no need here to revisit the principle stated in *Weaver*, 387 Mass. at 48, that relation back principles in rule 15 (c) do not apply to the presentment requirement. Rule 15 (c)'s relation back principles do apply to any action filed in the Superior Court following the end of the presentment period.

reach this issue, see note 8, *supra*, the Commonwealth raises it again here.

The Commonwealth contends that the original complaint was clearly defective because it was brought by a party without authority to do so; that the subsequent motion to amend the complaint by substituting as plaintiffs the Gavins in their capacities as temporary coexecutors could not remedy the original deficiency; and that, accordingly, denial of the motion to amend on futility grounds was proper. This is so, the Commonwealth argues, because as *temporary* coexecutors, the Gavins lacked the requisite authority to bring a wrongful death action. See *Marco*, 415 Mass. at 736-739. Finally, although the Commonwealth acknowledges in this appeal that the Gavins were appointed coexecutors of the estate on July 27, 2011, it asserts that this information was not part of the record below and, therefore, should not be considered by this court.

The wrongful death statute is clear that an action for wrongful death must be brought by the executor or administrator of the deceased. G. L. c. 229, § 2. *MacDonald*, 358 Mass. at 801. But cf. *Estate of Moulton* v. *Puopolo*, 467 Mass. 478, 480 n.8 (2014) (wrongful death action brought by estate not precluded when Commonwealth withdrew initial objection and parties proceeded as if estate were properly before Superior Court throughout litigation). Given the statutory command, we reject the estate's argument that a wrongful death action may properly be brought by the estate or even a temporary executor. See *Marco*, 415 Mass. at 736-739. This case, however, must be remanded to the Superior Court because improper presentment was the sole ground on which the motion judge based his dismissal of the complaint, and we have now concluded that the presentment letter filed by the estate on July 21, 2010, was valid. On remand, the estate may seek leave again to amend the complaint pursuant to Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), to address the issue concerning the identity of the proper plaintiff.[23]

[23]The Commonwealth concedes that, if the presentment was indeed proper, relation back principles could apply to the wrongful death claim. However, it argues that the Gavins, as coexecutors, are nevertheless precluded from amending their complaint at this late stage. This is particularly so, it claims, given the

3. *Conclusion.* The judgment of the Superior Court is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

.

---

fact that the estate could have filed either a motion to amend its complaint after the Gavins were appointed (before the judge issued his decision) or a motion for reconsideration after the motion to dismiss was allowed, but did neither. We disagree that these considerations bar the judge from considering a motion to amend on remand, should the estate choose to file one. As to the Commonwealth's first point, although the estate did not move to amend after the Gavins' appointment as coexecutors, the record reflects that it made a good faith effort promptly to inform the Superior Court of this change before the court issued its decision on the motion to dismiss. See note 7, *supra.* As to the second — that the Gavins should have filed a motion for reconsideration — given the judge's ruling that the presentment was improper, any attempt to do so would have been futile. These circumstances — particularly in light of the numerous equities discussed throughout this opinion — permit the judge on remand to consider a motion to amend, despite its delay.